UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NEW DOMINION, LLC, ) | |
| ) | |
| Plaintiff/Consolidated ) | |
| Defendant, ) | |
| ) | |
| v. ) | Case No. 20-CV-0592-CVE-CDL |
| ) | BASE FILE |
| H&P INVESTMENTS, LLC, ) | |
| ) | (Consolidated with: |
| Defendant/Consolidated ) | Case No. 21-CV-0504-CVE-CDL) |
| Plaintiff. ) | |

## OPINION AND ORDER

Before the Court are plaintiff/consolidated defendant New Dominion, LLC's (NDL) motion to reconsider (Dkt. # 120) the Court's opinion and order on legal expenses[1] based on recent events (Dkt. # 90), defendant/consolidated plaintiff H&P Investments, LLC's (H&P) response (Dkt. # 129), and NDL's reply (Dkt. # 133).[2] NDL seeks reconsideration based on certain post-opinion developments, supplemental evidence, and additional legal argument, and further asks the Court to grant NDL's motion for partial summary judgment (Dkt. # 78). Dkt. # 120, at 4. For the reasons set forth below, the Court denies NDL's motion (Dkt. # 120).

I.

On May 26, 2023, NDL filed a motion for partial summary judgment on legal expense (Dkt. # 78) arising out of NDL's defense and prosecution of third-party earthquake and insurance litigation

---

[1] Although the parties' briefing uses the term "legal fees," the Court uses the contractual term of "legal expense," as it is defined more broadly than fees. See, e.g., Dkt. # 69-1, at 107.

[2] NDL attached sixteen exhibits to its motion (Dkt. ## 120-1 - 120-16), and H&P attached twelve exhibits to its response (Dkt. ## 129-1 - 129-12).

related to saltwater disposal well operations. Dkt. # 90, at 1.[3] In its ten-page motion, NDL alleged that H&P had an obligation under the parties' contractual agreements to pay the legal expense. Id. H&P filed a response and cross-motion for partial summary judgment (Dkt. # 83), alleging that it had no contractual obligation to pay legal expense arising out of the earthquake and insurance litigation. Dkt. # 90, at 1. NDL filed a reply (Dkt. # 87). On December 19, 2023, the Court entered an opinion and order denying NDL's motion for partial summary judgment on legal expense, granting H&P's cross-motion for partial summary judgment, and declaring that H&P was under no obligation to pay legal expense arising out of the earthquake and insurance litigation. Dkt. # 90, at 1. The parties' joint operating agreements (JOAs) provide that the operator, NDL, shall charge the Joint Account[4] with legal expenses "incurred in or resulting from operations under the Operating Agreement[s] or necessary to protect or recover the Joint Property[5] . . . ." Id. at 9, 12, 15, ,17, 20. Therefore, the Court interpreted the following contractual clauses: (a) "operations under the Operating Agreement" and (b) "necessary to protect or recover the Joint Property." Id. at 29. In reaching its holding, the Court found that the contracts were unambiguous, the disposal wells were not Joint Property, and NDL's saltwater disposal well injections were not "operations under the Operating Agreement" as defined by the joint operating agreements (JOAs). Id. at 36.

---

[3] As the Court has extensively outlined this case's procedural posture and factual background in prior opinions, the Court recites only the background relevant to the instant motion.

[4] The Accounting Procedure attached to each JOA defines "Joint Account" as "the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties." Dkt. # 69-1, at 103; Dkt. # 83, at 6.

[5] The Accounting Procedure attached to each JOA defines "Joint Property" as the "real and personal property subject to the Operating Agreement to which this Accounting Procedure is attached." Dkt. # 69-1, at 103; Dkt. # 83, at 7.

On June 24, 2024, the Court stayed this matter so that the parties could pursue a private mediation. Dkt. ## 107, 108. On February 4, 2025, the Court lifted the stay and set a scheduling conference for February 10, 2025. Dkt. # 115. At the scheduling conference, NDL's counsel informed the Court that:

> We have a second -- a motion -- a second[6] motion to reconsider. And I -- I say that carefully because I don't like filing them. But there are new facts that have come to light since the Court's stay last July -- or June . . . .

Dkt. # 122, at 7. The Court asked NDL's counsel: "So it would be a motion to reconsider based on new evidence?" Id. NDL's counsel responded: "Correct." Id. On February 17, 2025, NDL filed its motion to reconsider (Dkt. # 120) the Court's opinion and order on legal expense (Dkt. # 90). H&P responded (Dkt. # 129), and NDL replied (Dkt. # 133).

## II.

NDL seeks reconsideration under FED. R. CIV. P. 54(b), which provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." However, "[t]he Federal Rules of Civil Procedure do not recognize a 'motion to reconsider." Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC, 887 F.3d 1003, 1023 (10th Cir. 2018), as revised (Apr. 13, 2018); Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). Therefore, the Court treats NDL's motion as a motion to alter or

---

[6] The Court previously considered NDL's motion to reconsider (Dkt. # 101) the Court's Oklahoma Production Revenue Standards Act (PRSA) fees opinion and order (Dkt. # 95) denying NDL's motion for partial summary judgment, granting H&P's motion for partial summary judgment, and declaring that NDL may not charge H&P maintenance fees under the PRSA based on the unambiguous terms of the parties' contracts. The Court denied the motion in part as to reconsideration and granted the motion in part as to the clarification of the opinion and order's language. Dkt. # 102, at 2.

amend judgment under FED. R. CIV. P. 59(e).[7] See Carbjal v. Lucio, 832 F. App'x 557, 569 (10th Cir. 2020) (unpublished)[8] ("For guidance in considering [] a motion [to reconsider an interlocutory order], the court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)."); Ankeney v. Zavaras, 524 F. App'x 454, 458 (10th Cir. 2013) (unpublished). Under Rule 59(e), a party may ask a district court to reconsider a final ruling or judgment when the district court has "misapprehended the facts, a party's position, or the controlling law." Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[9] Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). Reconsideration is "not available to allow a party to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." Id.; FDIC v. United Pac. Ins. Co., 152 F.3d 1266,

---

[7] The parties disagree as to which standard the Court should apply to a motion to reconsider an interlocutory order. Dkt. # 120, at 5-6; Dkt. # 129, at 9-11; Dkt. # 133, at 2-4. However, a district court has "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991). Therefore, the Court exercises its discretion and looks to Rule 59(e) for guidance in analyzing NDL's motion. Further, while NDL and H&P disagree as to whether NDL timely filed this motion (Dkt. # 129, at 12-13; Dkt. # 133, at 4), the Court assumes that NDL timely filed the motion for the purpose of this analysis.

[8] While unpublished decisions are not precedential, the Court may cite this and other unpublished decisions for their persuasive value. 10th Cir. R. 32.1(A).

[9] NDL does not argue that an intervening change in the controlling law occurred. Further, while NDL bases its motion on several recent events, it also argues that the recent events and industry practices establish "three main points of error." Dkt. # 120, at 4, 27; Dkt. # 133, at 4-7. Therefore, the Court construes NDL's motion as seeking reconsideration based on new evidence and the need to correct clear error or prevent manifest injustice.

1272 (10th Cir. 1998) (quoting Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)). "A Rule 59(e) motion to reconsider is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple." Syntroleum Corp. v. Fletcher Int'l, Ltd., No. 08-CV-384-JHP-FHM, 2009 WL 761322, at *1 (N.D. Okla. Mar. 19, 2009) (unpublished).

### III.

In NDL's motion to reconsider, it contends that "several events have occurred that demonstrate the validity of NDL's position with respect to billing the subject legal expenses to the Joint Account (and, thereby, to H&P)[,] [and] the Court should further analyze this issue in light of the broader practices in the industry . . . ." Dkt. # 120, at 4 (emphasis in the original). NDL argues that these events and practices establish "three main points of error . . ." and asks the Court to reconsider seven of its findings.[10]  Id. at 4, 8. H&P responds, inter alia, that the post-opinion developments are irrelevant. Dkt. # 130, at 14-15, 25-26. NDL replies, inter alia, that the new evidence requires reconsideration to correct clear error and prevent manifest injustice. Dkt. # 133, at 4.

NDL's "new evidence" arises out of three interrelated events that occurred after the Court entered its legal expense opinion and order on December 19, 2023. First, on March 1, 2024, NDL

---

[10]   NDL requests that the Court reconsider the following findings: "(1) [s]altwater disposal is an 'ancillary' rather than 'necessary' operation under the Controlling Agreements . . . ; (2) NDL has other alternatives for saltwater disposal . . . ; (3) [s]altwater disposal does not constitute "operations" under the Controlling Agreements . . . ; (4) [s]altwater disposal wells are not Joint Property under the Controlling Agreements . . . ; (5) NDL did not adequately demonstrate how defending earthquake litigation and prosecuting insurance cases are necessary to protect or recover the Joint Property . . . ; (6) H&P was not an insured party, so insurance cases were not necessary to protect or recover Joint Property under the Controlling Agreements . . . ; and (7) [t]he Court need not address whether H&P's consent was required to apportion legal expense arising from the earthquake and insurance litigation." Id. at 8.

declared a force majeure event under the Paden Participation Agreement because, inter alia, the Oklahoma Corporation Commission shut-in "the two disposal wells within the Paden project area . . . ." as a result of an earthquake on February 2, 2024, and, according to NDL, "no other viable disposal facility [existed] to which NDL could redirect the water from the producing wells." Dkt. # 120, at 6-7; Dkt. ## 120-1, 120-2; Dkt. # 120-3, at 1; Dkt. # 120-15.  Second, on April 29, 2024, a non-party plaintiff,[11] suing NDL in a salt water disposal class action lawsuit arising out of the February 2024 earthquake, amended his petition to include H&P as a defendant.[12]  Dkt. # 120, at 7; Dkt. # 120-4.  H&P has an interest in the alleged affected area "as a non-operating working interest owner in producing wells operated by NDL." Dkt. # 120, at 7.  As a result of this suit, a claim "under the general liability policy carried by NDL for the Joint Account under the applicable joint operating agreements" was made on behalf of H&P for defense coverage.[13]  Id.  Third, in early

---

[11]  The Court refers to the plaintiff in this class action as a "non-party plaintiff" because the plaintiff is not a party to the action before this Court.

[12]  H&P was added as a defendant based on that non-party plaintiff's allegation that NDL and H&P operated "a joint venture to produce oil and/or gas in Oklahoma[,]" and, "[a]s part of the joint venture, New Dominion and H&P must dispose of the waste water they produce from their oil and gas production processes." See Dkt. # 120-4, at 13-14.  In H&P and NDL's answers to the non-party plaintiff's second amended petition, both parties denied that a joint venture exists and denied "that H&P disposes into these disposal wells . . . ." Dkt. # 129-3, at 5; Dkt. # 129-4, at 5.

[13]  While NDL claims that H&P itself submitted a claim for defense coverage (Dkt. # 120, at 7), NDL's general counsel's carefully worded declaration and his email to H&P's vice president indicate that NDL may have submitted a claim for defense coverage on H&P's behalf.  Compare Dkt. # 120-3, at 2 (NDL's general counsel's declaration in which he avers (without attribution) that "H&P's defense was also tendered to [NDL's] insurance company . . . ."), with Dkt. # 129-5, at 1 (email from NDL's general counsel to H&P's vice president stating: "[l]ooks like our insurance will cover H&P as a non-op[erator]."). Regardless, the purported post-opinion alleged defense coverage of H&P has no bearing on the Court's opinion and order, because the Court found, based on the unambiguous contractual language, that the salt water disposal wells were not "Joint Property" and that the saltwater disposal

December 2024,[14] NDL settled its claim against its insurance agent and settled "the remaining eight [] class action earthquake cases addressed in the [o]pinion for which NDL's insurer had refused to provide coverage[,]" with the proceeds from that settlement "for the benefit of the Joint Account."[15] Id. at 7-8, 25; Dkt. # 120-3, at 2. Taken together, NDL presents the following "new evidence": NDL declared force majeure under one of the parties' agreements; a non-party plaintiff amended his state court petition to add H&P as the only non-operator working interest owner defendant under the agreements; an insurance claim under NDL's general liability policy was made; NDL also made a claim against its insurance agent; NDL settled its claim against its insurance agent and settled "the remaining eight [] class action earthquake cases addressed in the [o]pinion for which NDL's insurer had refused to provide coverage[;]" and NDL elected to distribute the settlement funds in a manner that "benefitted" the Joint Account. NDL now characterizes this set of events as "new evidence" to justify its motion to reconsider.

---

      well injections undertaken by NDL were not "operations under the Operating Agreement" as the terms are used in the JOAs. See Dkt. # 90, at 29, 35, 36.

[14]    In the body of NDL's motion, it states that it settled its claim against its insurance agent in early December 2023. Dkt. # 120, at 7. However, NDL's general counsel avers that the claim settled in December 2024. Dkt. # 120-3, at 2. The Court relies on the general counsel's declaration.

[15]    NDL's general counsel avers that "[t]he amounts [NDL] received from [the insurance agent's] insurer in excess of the amount paid for the uninsured claims were credited by [NDL] to the joint account for the 'earthquake' attorney fees [NDL] had charged to its working interest owners in February, 2024. H&P did not receive this credit because this Court's decision on earthquake claims intervened, and [NDL] instead elected to pay H&P what the Court found it owed to avoid additional interest charges." Dkt. # 120-3, at 2-3.

NDL's "new evidence" simply has no bearing on the Court's analysis in its opinion and order in which the Court found, as a matter of law, that the contracts are unambiguous. See Dkt. # 90, at 36. In its opinion and order, the Court explained that:

> The language of the contracts is clear and explicit, and the parties' intent plainly ascertainable. Accepted in their plain and ordinary sense, the terms of the participation agreement provide that NDL is the sole owner of the saltwater disposal wells. It is clear that these disposal wells are not joint property. Moreover, the saltwater disposal well injections undertaken by NDL are not "operations under the operating agreement" as the term is used in the JOAs. Therefore, the Court finds and concludes that the contracts do not permit NDL to charge H&P for the legal expense arising out of its earthquake and insurance litigation.

Id. NDL's creative attempt to manufacture a basis for reconsideration does not alter this Court's findings and conclusions concerning the contracts' unambiguous, clear, and explicit language and, thus, provides no basis to reconsider the earlier opinion and order. The Court finds that NDL's proffered "new evidence" is immaterial and fails to establish clear error or manifest injustice arising out of the Court's opinion and order.[16]

Nevertheless, the Court will consider NDL's "three main points of error" argument.[17] First, NDL argues that its "dewatering operations, gas production from the subject fields, and the extensive saltwater disposal operations resulting from that production are inextricably intertwined such that production simply cannot continue without disposal." Dkt. # 120, at 4. The Court considered this

---

[16] Thus, the Court need not reach the issue of whether NDL's proffered evidence qualifies as "new evidence" under Rule 59(e). Dkt. # 129, at 14-15; Dkt. # 133, at 5.

[17] At the scheduling conference, NDL disclosed that it sought reconsideration on the basis of new evidence. Dkt. # 122, at 7. Further, NDL titles its motion: "motion to reconsider opinion on legal fees on disposal wells based on recent events." Dkt. # 120, at 1 (emphasis omitted). Yet, NDL dedicates most of its 30 page motion to rearguing and expanding upon arguments previously considered by the Court, which it summarizes as "three main points of error." See generally Dkt. # 120.

argument when ruling on NDL's partial motion for summary judgment as to legal expense and found the argument to be irrelevant. Dkt. # 87, at 4-5; Dkt. # 90, at 29-31. Second, NDL argues that "the parties have agreed that disposal operations are contractually essential to the parties' operations under the Controlling Agreements,[18] rather than merely ancillary." Dkt. # 120, at 4-5. This argument simply expands upon the first argument. Further, as the Court explained in its opinion and order,

> At issue is not whether saltwater disposal wells are a necessary ancillary component of oil and gas production; it is whether the earthquake and insurance litigation legal expense <u>resulted from operations under the operating agreement</u>. NDL's flowery argument that oil and gas operations "inexorably, inevitably, and inseparably" require the use of saltwater disposal wells is consequently irrelevant. Saltwater disposal well injections are not "operations" under the parties' JOAs.

Dkt. # 90, at 30-31 (internal citations omitted).[19] Third, NDL argues that it defended against the earthquake litigation and advanced insurance coverage "specifically to preserve and protect the parties' operations under the Controlling Agreements, without which the parties' Joint Property and the production therefrom would likely have been lost." Dkt. # 120, at 5. The Court previously considered NDL's third argument and found that it was baseless. Dkt. # 78, at 8; Dkt. # 87, at 5;

---

[18]   NDL defines the Controlling Agreements as the five "separate participation agreements and, where applicable, the respectively attached joint operating agreements referenced in the [o]pinion for the [p]rojects . . . namely: (1) the Golden Lane Project Participation Agreement and Joint Operating Agreement . . . , (2) the Boomtown Project Participation Agreement and Joint Operating Agreement . . . , (3) the Paden Project Participation Agreement and Joint Operating Agreement . . . , (4) the Amended and Restated Eight East Project Participation Agreement and Joint Operating Agreement . . . , and (5) the Luther Hunton Project Joint Operating Agreement . . . ." Dkt. # 120, at 5-6 n.5.

[19]   The Court's reference to salt water disposal elsewhere and the economic and operational impact thereof has no bearing on the Court's determination that the salt water disposal wells were not "Joint Property" and that the saltwater disposal well injections undertaken by NDL were not "operations under the Operating Agreement" as the terms are used in the JOAs. See Dkt. # 90, at 35, 36.

Dkt. # 90, at 34-35. As a motion to reconsider does not provide a party the opportunity to reargue or expand upon issues the Court previously addressed, NDL's purported points of error do not provide grounds for a motion to reconsider.[20] Consequently, the Court declines to reconsider its opinion and order, including the seven allegedly erroneous findings.[21]

**IT IS THEREFORE ORDERED** that NDL's motion to reconsider opinion on legal expense based on recent events (Dkt. # 120) is **denied**.

**DATED** this 2nd day of June, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[20] NDL also contends that the Court failed to fully integrate the participation agreements with their attached JOAs in its opinion and order. Dkt. # 120, at 15-17; Dkt. # 133, at 7-8. To be clear, the Court considered the contracts as a whole. See e.g., Dkt. # 90, at 31.

[21] As NDL provides no valid basis for reconsideration, the Court does not reach the parties' arguments as to H&P's purported reliance on the opinion and order, the significance of how thoroughly the Court and the parties addressed these issues, and whether H&P consented to the legal expense. Dkt. # 129, at 11, 12-13, 23-25; Dkt. # 133, at 2, 4, 11.